

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 13, 2017

By ECF
The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 1305
New York, New York 10007

      Re:    *United States* v. *Moises Cueto*, S20 11 Cr. 1032 (PAE)

Dear Judge Engelmayer:

      The Government respectfully submits this letter in advance of sentencing in this matter, currently scheduled for July 20, 2017, at 2:30 p.m., on the defendant's conviction of murder in aid of racketeering. As set forth in detail below, on April 16, 2010, the defendant and another individual, both then-members of the Bad Boys chapter of the Bronx Trinitarios Gang ("BTG" or "Gang"), brutally stabbed Juandy Paredes in a dark alleyway and left him for dead. The defendant's actions were vicious and part of the broader destruction wrought by the BTG on the northwest Bronx. Accordingly, the Government respectfully submits that a substantial term of imprisonment is warranted in this case. Such a sentence would appropriately reflect the incredible seriousness of the crime, provide just punishment, provide the needed general deterrence, and reflect the defendant's history and characteristics.

## RELEVANT BACKGROUND

      A.    Cueto's Membership in the BTG

      The Presentence Investigation Report ("PSR") describes in detail the operations of the Trinitarios from its formation in the New York state prison system to the functioning of the BTG on the streets of the Bronx. (PSR ¶¶ 78-83.) The PSR concisely summarizes BTG's destructive activities during the extended time period of the charged crimes. (*Id.*) As the Court is well aware, BTG members and associates terrorized the northwest Bronx on a daily basis by selling drugs in an open-air market, possessing firearms and other weapons, and committing frequent stabbings and shootings of rival gang members and drug dealers using those weapons. (*Id.*)

The Honorable Paul A. Engelmayer, p. 2
July 13, 2017

Cueto was initiated as a member of the Bad Boys chapter of the Trinitarios in 2009.[1] (PSR ¶ 84.) Cueto was present during meetings of the Bad Boys, and he often wore lime green, which was the color of the Gang. (Indeed, as detailed below, Cueto wore a green vest during the murder of Paredes.) Cueto also occasionally sold prescription pills as part of his membership in the Gang. (PSR ¶ 90.) In addition to the murder, Cueto participated in one other stabbing. In the winter of 2009, Cueto and other members of the Bad Boys fought against individuals with whom the Gang had a prior altercation. (PSR ¶ 89.) During this fight, Cueto cut his victim on the hand and back with a knife. (*Id.*)

### B.   The Murder of Juandy Paredes

The murder of Juandy Paredes on April 16, 2010 was senseless. On the night of the murder, a now-cooperating witness and then-member of the Bad Boys ("CW-1") received a text message from a friend in the "Violating All Bitches" or "VAB" set of the Trinitarios. The message asked whether CW-1 had seen a YouTube video posted by the 268 set of the Trinitarios that insulted the Bad Boys. (PSR ¶ 85.) After CW-1 and Cueto viewed the video, they armed themselves with knives and went to 268 territory to retaliate. (*Id.*)

Once they arrived, Cueto and CW-1 saw Paredes and two others in the street who were known to them as members of 268. (PSR ¶ 86.) An altercation ensued between CW-1, Cueto, and members of the 268. The 268 members then fled, but CW-1 and Cueto caught up to Paredes. (*Id.*) During the subsequent fight, some of which took place in an alleyway, Cueto stabbed Paredes about four times. CW-1 swung with his knife several times at Paredes as well, unsuccessfully attempting to stab him. (*Id.*) The medical examiner ultimately determined that Paredes died from stab wounds. (*Id.*)

Following the murder, Cueto threw his knife in an alley, and CW-1 got rid of his knife in a fire hydrant. (PSR ¶ 87.) Law enforcement found Cueto's knife in the alley next to the scene of the murder, covered with blood. (*Id.*) Moreover, immediately following the murder, Cueto went into a nearby bodega and took off the green vest he was wearing and left it near the back of the store. (*Id.*) Security footage from the bodega shows Cueto in the bodega, and DNA evidence recovered from an item in the green jacket matched Cueto's DNA. (*Id.*)

In the days after the murder, Cueto and CW-1 fled to the Dominican Republic to avoid apprehension. (PSR ¶ 88.) While there, they learned that another person had been charged with the murder who had no involvement in the crime. (The charges were eventually dropped against that individual.) Nevertheless, Cueto and CW-1 did not come forward or return to the United States until 2011. (*Id.*)

### C.   The Plea Agreement and PSR

On June 9, 2016, Cueto was charged in a superseding indictment with one count of murder in aid of racketeering in connection with Paredes's murder, in violation of Title 18, United States

---

[1] The PSR erroneously states that Cueto was a member of the BTG until his arrest in June 2016. In actuality, Cueto withdrew from the Gang shortly following the Paredes murder.

The Honorable Paul A. Engelmayer, p. 3
July 13, 2017

Code, Sections 1959(a)(1) and 2. On April 5, 2017, Cueto pled guilty to the superseding indictment pursuant to a plea agreement (the "Plea Agreement"). In the Plea Agreement, the parties agreed that the defendant had no criminal history points and, therefore, is in Criminal History Category I. The parties also agreed that Paredes's murder constituted a second-degree murder (*i.e.*, that the murder was not premeditated) with a base offense level of 38 pursuant to U.S.S.G. § 2A1.2.

In determining that the second-degree murder Guideline applies to Cueto's conduct, the Government closely reviewed the Court's Order, dated July 30, 2015, following the *Fatico* hearing for defendants Hargelis Vargas, Jugo Cespedes, and Manuel Geraldo (the "*Fatico* Order"). In the *Fatico* Order, the Court determined that the murder of Orlando Salgado was a second-degree murder because the evidence of the defendants' intent in advance of the murder was "more consistent with an intent to assault than an intent to kill." (*Fatico* Order at 8.) Considering the *Fatico* Order, the Government believes that Cueto's conduct, although plainly indicative of a premeditated attack, does not support an inference of premeditated murder. Specifically, the facts of the Paredes murder—an uncoordinated melee that lasted a matter of seconds—are consistent with retaliatory non-fatal assaults committed by other members of the Gang.

Given a base offense level of 38, the total offense level becomes 35 after deducting three points for timely acceptance of responsibility. As a result, the Stipulated Guidelines Range set forth in the Plea Agreement is 168 to 210 months' imprisonment.[2] Probation agrees with the calculation of the Guidelines range and recommends a sentence of 210 months' imprisonment. (PSR ¶¶ 107-116; 120-21; 148; p. 27.)

**DISCUSSION**

**I.   APPLICABLE LAW**

The Guidelines still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005) and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer mandatory, it also held that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range"—that "should be the starting point and the initial benchmark." *Gall* v. *United States*, 55 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate

---

[2] As noted in the Plea Agreement, the offense of conviction ordinarily carries a mandatory sentence of life imprisonment or death. However, Cueto was a juvenile at the time of the offense. Accordingly, pursuant to *Roper* v. *Simmons*, 543 U.S. 551 (2005) (holding execution of juvenile offenders unconstitutional), and *Miller* v. *Alabama*, 567 U.S. 460 (2012) (holding life imprisonment without parole of juvenile offenders unconstitutional), the maximum penalty is life imprisonment with no mandatory minimum term.

The Honorable Paul A. Engelmayer, p. 4
July 13, 2017

purposes of sentencing, *id.* § 3553(a)(2); "the kinds of sentences available," *id.* § 3553(a)(3); the Guidelines range itself, *id.* § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *id.* § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7). In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)    to afford adequate deterrence to criminal conduct;
>
> (C)    to protect the public from further crimes of the defendant; and
>
> (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*See* 18 U.S.C. § 3553(a)(2). Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall* v. *United States*, 552 U.S. at 50 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *see also Rita* v. *United States*, 551 U.S. at 349. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

## II.    THE COURT SHOULD IMPOSE A SUBSTANTIAL SENTENCE

The Government respectfully submits that a substantial term of imprisonment would be sufficient, but not greater than necessary, to comply with the purposes of sentencing. Such a sentence would appropriately take into account the Guidelines and Section 3553(a) factors.

### A.    Seriousness of the Offense and Need to Afford Adequate Deterrence

Most significantly, a substantial sentence would properly reflect the seriousness of the offense, promote respect for the law, and provide just punishment. The defendant engaged in the gravest conduct. As a member of the Trinitarios, the defendant stabbed a man to death in a dark alleyway. There are several aspects of that murder that make it particularly troubling.

As an initial matter, Cueto and CW-1 premeditated a brutal attack. As noted above, Cueto and CW-1 were intent on getting even with members of the 268 set who had allegedly created a

video that was disrespectful to the Bad Boys. As a result, Cueto and CW-1 went armed with knives to 268 territory searching for rivals to harm. When they arrived, an altercation ensued between members of the 268 set who subsequently tried to flee. Although the incident could have ended at that point, it did not. Cueto and CW-1 chased after Paredes, fought with him in an alleyway, and stabbed him several times. Cueto and CW-1 then fled the scene, discarded the murder weapons, and left Paredes mortally wounded. To make matters even worse, Cueto appeared willing to let an innocent person take the fall for Cueto's conduct after that person was arrested for the killing. Instead of turning himself in, Cueto remained in the Dominican Republic where he had fled following the murder.

The premeditation of the attack, the viciousness of the stabbing, the desire to inflict injury on others for a senseless reason, and Cueto's conduct following the attack are all factors that justify a substantial sentence. Moreover, the Paredes murder was not Cueto's only act of violence. Prior to the Paredes murder in 2009, Cueto stabbed another individual during an altercation with the Gang.

A substantial sentence is also necessary to afford adequate deterrence in this case. Gang violence, and in particular violence perpetrated by the BTG, is a significant problem in New York and beyond. The defendant's sentence should communicate to other people who consider joining a gang, let alone those who engage in violence, that the consequences are extremely serious. The Government recognizes, however, that the need for specific deterrence and incapacitation appear to be less significant in this case. Cueto has no criminal history beyond one misdemeanor conviction for trespass and two arrests for what appear to be non-violent offenses. (PSR ¶¶ 119, 123-24.) Furthermore, as described in more detail below, following the murder, Cueto withdrew from the BTG and stopped engaging in acts of violence.

    B.   The History and Characteristics of the Defendant

Cueto's conduct with the Trinitarios is obviously a very substantial and very serious part of his history and characteristics. However, other aspects of his upbringing and more recent behavior mitigate in his favor at sentencing. As an initial matter, Cueto had a difficult upbringing. His mother passed away when he was eight years old, undoubtedly a traumatic experience. (PSR ¶ 125.) After his mother's death, Cueto lived in a variety of places, including with his grandparents in the Dominican Republic until about 2004, with his father in Florida between 2006 and 2008, and finally with his brother, cousin, and uncle in the Bronx. (PSR ¶ 131.)

According to the defendant's sentencing submission, the defendant had a difficult time adjusting to life in the Bronx, struggling with depression and drug abuse stemming from his mother's death. (Def.'s Sub. at 5.) As a result, he fell under the influence of members of the Trinitarios and joined the Gang in 2009. (*Id.*) While the Government recognizes that the defendant's circumstances were not ideal, they were also not extraordinary. Many people face the same (or worse) circumstances and do not decide to join a Gang or engage in violence. In fact, Cueto has six older siblings, all of whom are presently employed. (PSR ¶ 126.)

Nevertheless, it is notable that Cueto joined the Trinitarios at the age of fifteen and committed the murder at the age of sixteen, when he was likely more impressionable than he is

The Honorable Paul A. Engelmayer, p. 6
July 13, 2017

today. While the defendant's behavior cannot be explained away by youthful impulsivity—and certainly does not justify the extraordinarily low ten year sentence advocated for by defense counsel—his age is of course an important factor in fashioning a sentence. Moreover, Cueto was not a high-ranking or prolific member of the Gang, and he withdrew from the Gang following the murder. The latter point is an extremely important one. As the Court is well aware, some members of the Gang who committed acts of violence, including murders, continued engaging in violence regardless of the consequences. Cueto appeared to make a conscious decision to withdraw from the Gang and violence following the murder, which suggests that he will not be a danger in the future.

Cueto's decision to withdraw is also important because it means that the Court is sentencing Cueto for conduct that all occurred prior to his seventeenth birthday. In this regard, Cueto's more recent conduct suggests that he is not a danger to the community. As noted above, the Government is not aware of any acts of violence committed by Cueto since he was sixteen years' old. Moreover, although the defendant has been arrested three times since the murder, all of those offenses appear to be for minor, non-violent offenses. Furthermore, according to the defendant's sentencing submission, the defendant has held various jobs since leaving the Gang, including as a taxi driver, lifeguard, and retail store clerk, which suggests that Cueto can earn a legitimate living after he is released from prison. (Def.'s Sub. at 9.) Cueto has also had a very positive adjustment while in prison, taking advantage of several BOP developmental programs. (Def.'s Supplemental Sub. at A-4.) All of these factors mitigate in his favor at sentencing.

It is also clear from the letters submitted by Cueto's family members and pastor that he will likely have a strong support network when he is released from prison. The letters provide insight into Cueto's background beyond his participation in the BTG. Among other things, Cueto is described as "cheerful and engaging," "hardworking, honest, responsible, loving, and studious," "an extremely loving person," and having "a good heart." (Def.'s Supplemental Sub. at A-7; A-11; A-12; A-14.) The letters paint a more complicated picture of Cueto than someone who was involved in violent gang activities.

### C. The Need to Avoid Unwarranted Disparities Among Defendants

Finally, a substantial term of imprisonment in this case would not create "unwarranted disparities among defendants." 18 U.S.C. § 3553(a)(6). In this regard, the closest comparator to the defendant is Hargelis Vargas, who was sentenced to 210 months' imprisonment—a sentence at the top of his Guidelines range—for the murder of Orlando Salgado. Vargas and Cueto share several similarities. Both were minors (Vargas 17 and Cueto 16) at the time of the murders in which they participated, and both did not engage in any subsequent acts of violence.

There are also some distinguishing factors between Vargas and Cueto. Vargas was a member of the Trinitarios for longer than Cueto and, in the Government's view, remained a member of the Gang well after the Salgado murder. Similarly, Vargas committed numerous disciplinary infractions in prison while Cueto does not have any infractions to date. Moreover, Vargas was the "but for" cause of the Salgado murder in that he recruited other members of the Trinitarios to retaliate and then identified the eventual victim. However, Vargas did not physically strike Salgado, whereas Cueto stabbed his victim to death. On balance, Cueto appears to be the

The Honorable Paul A. Engelmayer, p. 7
July 13, 2017

closest in culpability to Vargas.

## **CONCLUSION**

For the reasons set forth above, the Government respectfully submits that Cueto should be sentenced to a substantial term of imprisonment.

                                                               Respectfully submitted,

                                                               JOON H. KIM
                                                               Acting United States Attorney

By:          /s/
                     Matthew Laroche
                     Assistant United States Attorney
                     (212) 637-2420

cc:    Anthony Ricco, Esq. (by ECF)