UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

MOISES CUETO,

Defendant.

11 Cr. 1032-80 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

The Court has received an application from defendant Moises Cueto seeking his release from Federal Correctional Institution ("FCI") Fort Dix pursuant to §3582(c)(a)(A)(i), in light of the risk that the COVID-19 pandemic presents to his health. *See* Dkt. 2526 ("Def. Mot."); Dkt. 2567 ("Def. Mem."); Dkt. 2583 ("Def. Reply"). The Government opposes his request. *See* Dkt. 2573 ("Gov't Opp'n"). For the reasons that follow, the Court denies Cueto's motion.

In 2009, at around age 15, Cueto was initiated as a member of the Bad Boys chapter of the Bronx Trinitarios gang. In connection with the gang, Cueto largely sold prescription pills, but by far his most significant crime involved stabbing to death Juandy Paredes, a member of the rival gang 268 Trinitarios ("286"), on April 16, 2010. That night, Cueto, then age 16, and another Bad Boys member ("CW-1") had watched a 268 YouTube video insulting the Bad Boys. In retaliation, they went into 268 territory armed with knives. Cueto and CW-1 identified Parades and two others as 268 members. Cueto stabbed Paredes four times in the street, killing him. Parades was 17 years old. On learning of Paredes' death, Cueto fled to the Dominican Republic. *See* Dkt. 2217 ("Sent. Tr.") at 35, 54.

On July 1, 2016, Cueto was arrested for Paredes's murder, and, on April 5, 2017, pled guilty to murder in aid of racketeering pursuant to a plea agreement. In the plea agreement, the parties agreed that Paredes's murder constituted a second-degree murder. On July 20, 2017, in sentencing Cueto, the Court adopted the stipulated Guidelines range of 168 to 210 months' imprisonment. After considering the factors set forth in 18 U.S.C. § 3553(a), the Court sentenced Cueto to 174 months' imprisonment, followed by a five-year term of supervised release. Sent. Tr. at 47, 66. In sentencing him, the Court considered Cueto's youth at the time of the offense and at least some of his rehabilitative steps. *See* Gov't Opp'n at 9. As of today, Cueto has served approximately four years and seven months of his stated prison term, having been incarcerated since his arrest.

On October 29, 2020, the Court received a *pro se* motion from Cueto seeking early release in light of the COVID-19 pandemic. On December 16, 2020, the Court appointed CJA counsel to file a memorandum in support of Cueto's motion. Dkt. 2553. On January 13, 2021, Cueto's counsel submitted that memorandum. Counsel argues that compassionate release is warranted here in light of the pandemic, the unexpectedly harsh and dangerous circumstances at FCI Fort Dix occasioned by the pandemic, and the fact that Cueto already contracted the virus and was symptomatic. Other factors cited in support of his release are the passage of time, Cueto's youth at the time of the crime, his demonstrated remorse, his participation in rehabilitation programs, and his release plan supported by his family.

On January 20, 2021, the Government opposed Cueto's motion. The Government argues that the Court lacks jurisdiction to grant Cueto's motion in light of Cueto's pending appeal. It also argues, assuming jurisdiction, that Cueto's release would conflict with the § 3553(a) factors.

## I. Jurisdiction

As a threshold matter, the Court must determine whether it has jurisdiction to grant a compassionate release motion in light of Cueto's pending appeal.[1] "The filing of a notice of appeal is an event of jurisdictional significance," which "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982).

Cueto concedes that his appeal divests the Court of jurisdiction to grant his compassionate release motion. *See* Def. Reply at 2; *see also, e.g.*, *Ching v. United States*, 298 F.3d 174, 180 n.5 (2d Cir. 2002); *see also, e.g.*, *Berman v. United States*, 302 U.S. 211, 214 (1937) (rule applies in criminal cases); *United States v. Katsougrakis*, 715 F.2d 769, 777 (2d Cir. 1983) (same); *United States v. Afriyie*, No. 16 Cr. 377 (PAE), 2017 WL 6375781, at *3 (S.D.N.Y. Dec. 11, 2017) (same).

Instead, he requests that the Court enter an indicative ruling, under Federal Rule of Criminal Procedure 37, that it *would* grant the motion should the Second Circuit remand the case. Under that provision, "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P. 37(a). The advisory committee notes list "motions under 18 U.S.C. § 3582(c)" as

---

[1] On July 27, 2017, Cueto appealed his sentence to the Second Circuit. *See* Dkt. 2205 (notice of appeal). On March 28, 2018, his then-counsel, Anthony Ricco, Esq., filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), explaining that there were no non-frivolous arguments to raise on appeal. *See United States v. Cueto*, No. 17-2336, Dkt. 65. On November 23, 2020, the Second Circuit entered an order to hold Cueto's appeal in abeyance until May 12, 2021. *Id.*, Dkt. 137.

one of three types of motions for which the drafters "anticipate[ ] that Criminal Rule 37 will be used primarily if not exclusively." Fed. R. Crim. P. 37 advisory committee's note (2012). Reflecting this Circuit's longstanding approach in both civil and criminal cases—*see, e.g.*, *United States v. Camacho*, 302 F.3d 35, 36–37 (2d Cir. 2002); *King v. First Am. Investigations, Inc.*, 287 F.3d 91, 94 (2d Cir. 2002); *Toliver v. Cnty. of Sullivan*, 957 F.2d 47, 49 (2d Cir. 1992)—this rule allows district courts to deny, but not to grant, a motion for which it lacks jurisdiction due to a pending appeal.

## II.    Merits

Because the Court would deny Cueto's § 3582(c) motion had he not filed a notice of appeal, in the interests of judicial economy, the Court reaches the merits, pursuant to Rule 37, and, for the reasons that follow, denies the motion.

Under 18 U.S.C. § 3582(c)(1)(A), a court:

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf . . . may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that— (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant bears the burden of proving that he is entitled to compassionate release under 18 U.S.C. § 3582(c). *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); *United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, § 3582(c)(1)(A) did not permit prisoners to initiate compassionate release proceedings, and instead required the Bureau of Prisons ("BOP") to seek such release on their

behalf.  *United States v. Ebbers*, 432 F. Supp. 3d 421, 422–23, 427 (S.D.N.Y. 2020).  However, with the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, Congress amended the law to allow defendants independently to seek compassionate release from federal courts.  *Ebbers*, 432 F. Supp. 3d at 422–23.

The Second Circuit has recently clarified the regulatory guidance applicable to § 3582(c) applications made by defendants.  Before the First Step Act, Congress had tasked the Sentencing Commission with identifying circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence.  *Id.* at 427 (citing 28 U.S.C. § 994(t)).  The Commission did so in U.S.S.G. § 1B1.13 and its corresponding commentary.  That guidance, *inter alia*, (1) sets out various circumstances that present extraordinary and compelling reasons justifying release; and (2) requires that a defendant not be a danger to the community.  *Id.* § 1B1.13(1)–(3) & cmt. n.1(A)–(D).

By its terms, however, the Commission's guidance applies only to a "motion of the Director of the Bureau of Prisons," *id.* § 1B1.13; the Commission has not updated § 1B1.13 or its commentary to reflect the First Step Act's amendment to § 3582(c)(1)(A) authorizing defendants to move for compassionate release on their own.  Accordingly, although courts, including this one, had heretofore widely treated the Commission's guidance as applicable to all compassionate release motions, *see, e.g.*, *United States v. Hernandez*, 451 F. Supp. 3d 301, 303 (S.D.N.Y. 2020); *see also Ebbers*, 432 F. Supp. 3d at 428, the Second Circuit has recently clarified that § 1B1.13 "is not 'applicable' to compassionate release motions brought by defendants," rather than by the BOP, and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling" in such cases.  *United States v. Brooker*, 976 F.3d 228, 236

(2d Cir. 2020); *see also id.* at *7 ("Neither Application Note 1(D), *nor anything else in the now-outdated version of Guideline § 1B1.13*, limits the district court's discretion." (emphasis added)).

Consistent with *Brooker*, in assessing a § 3582(c) motion brought directly by a defendant, the Court is not constrained by either § 1B1.13's enumeration of extraordinary and compelling reasons, or its freestanding requirement that the defendant seeking release not pose any danger to the community. Rather, the Court, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," 18 U.S.C. § 3582(c)(1)(A)(i), may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Brooker*, 976 F.3d at 237.

The parties first dispute whether Cueto's case presents extraordinary and compelling reasons warranting early release. Cueto argues that, taken together, the harsh conditions at FCI Fort Dix arising from the COVID-19 pandemic; his having contracted COVID-19; his youth at the time of the Paredes murder; his demonstrated remorse; and his family-supported release plan so qualify. *See generally* Def. Mem.; *see also* Def. Reply at 2, 4, 7–9. Counsel for Cueto also notes that he has been notified that, if released, Cueto would be permitted to participate in the Delancey Street Foundation program, a post-release residential program. *See* Def. Mem. at 2; Def. Reply at 3–4. The Government disputes that there are extraordinary and compelling reasons justifying release. Gov't Opp'n. at 6. It notes that Cueto's disciplinary record in prison reflects troubling conduct, and that the Court, in imposing sentence, already considered Cueto's youth at the time of the offense and at least some of his rehabilitative steps. *Id*. at 9; Dkt. 2582 (letter from Government).[2] The Government also notes that conditions have improved at FCI Fort Dix,

[2] In its opposition, the Government mistakenly indicated that these factors had been considered in the Court's imposing a downward variance. On February 5, 2021, the Government filed a

and that Cueto was treated and recovered from his bout with COVID-19 virus.  *Id*.  Most fundamentally, the Government argues that the § 3553(a) factors do not support Cueto's release, with his having served less than five years of his sentence.  *Id.* at 6.

At the outset, Cueto's asserted reasons for release, while not to be minimized, fall short of the bases for such relief that have been presented in most cases in which the Court has granted compassionate release.  To be sure, the COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation.  It presents a clear and present danger to free society for reasons that need no elaboration.  The crowded nature of federal prisons in particular presents an outsized risk that the COVID-19 contagion, once it gains entry, will spread.[3]  In that respect, COVID-19 poses a heightened health risk to all inmates.  And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself.  Beyond the risks to health, the pandemic has also subjected all inmates to far more restrictive conditions of confinement, and has resulted in limits on access to visitors, including family, far beyond what could have been expected at the time of sentencing.  For these reasons, in the past months, various courts, including this one, have ordered the temporary release of inmates held in pretrial

---

letter correcting the error and explaining that the Court had taken these factors into account in imposing a within-Guidelines sentence.  Dkt. 2582.

[3] *See* Timothy Williams, et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (May 20, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, 450 F. Supp. 3d 491, 492 (S.D.N.Y. 2020) (citing *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control & Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf) (highlighting danger faced by those in jails and prisons).

or presentencing custody[4] and the compassionate release of high-risk inmates serving federal sentences.[5]

Cueto offers limited reasons, however, as to why the risks he faces exceed those faced by others in federal custody. He is young and does not claim to have any co-morbidities associated with COVID-19. To be sure, one fact differentiates Cueto from the general population: he has already contracted COVID-19, although he was reportedly informed he was not sick enough to receive treatment. *See* Def. Mem. at 17–18. The Court agrees with the defense that having already contracted COVID-19 does not preclude an inmate from compassionate release. *See* Def. Reply at 5; *see also* Dkt. 2581 (granting compassionate release to co-defendant Andy Ciprian, who contracted a mild case of COVID-19 in prison). Here, however, Cueto has

---

[4] *See, e.g.*, *United States v. Chandler*, --- F. Supp. 3d ---, No. 19 Cr. 867 (PAC), 2020 WL 1528120, at *1–3 (S.D.N.Y. Mar. 31, 2020) (granting bail application, under 18 U.S.C. § 3142(i), of defendant charged with being a felon in possession of a firearm); *United States v. McKenzie*, 450 F. Supp. 3d 449 (S.D.N.Y. 2020) (granting bond pending sentencing, under 18 U.S.C. § 3145(c), to defendant who had pleaded guilty to single count of assault with a deadly weapon and had been released on bond); *United States v. Witter*, No. 19 Cr. 568 (SHS), Dkt. 40 at 2–3 (S.D.N.Y. Mar. 26, 2020) (granting bond pending sentencing, under § 3145(c), to defendant who had pleaded guilty to a narcotics offense); *cf. United States v. Stephens*, 447 F. Supp. 3d 63 (S.D.N.Y. 2020) (granting defendant's request for reconsideration of bail conditions and releasing him to home confinement, while noting that, in the alternative, § 3142(i) would require his temporary release).

[5] *See, e.g.*, *United States v. Wilson*, 16 Cr. 317 (PAE), Dkt. 656 at 4–7 (S.D.N.Y. Aug. 31, 2020) (ordering compassionate release of defendant with heighted vulnerability who had served the substantial majority of his sentence and played a low-level role in a drug trafficking conspiracy); *United States v. Simon*, --- F. Supp. 3d ---, No. 18 Cr. 390-15 (PAE), 2020 WL 5077390, at *4–6 (S.D.N.Y. Aug. 27, 2020) (ordering compassionate release of elderly defendant, who had serious medical conditions and played a low-level role in a drug trafficking conspiracy); *United States v. Davies*, No. 18 Cr. 390 (PAE), Dkt. 479 at 4–7 (S.D.N.Y. June 26, 2020) (ordering compassionate release of elderly defendant, who had serious medical conditions and played low-level role in drug trafficking conspiracy); *United States v. Brown*, 467 F. Supp. 3d 209, 212–13 (2020) (same); *United States v. Jasper*, No. 18 Cr. 390 (PAE), 2020 WL 1673140, at *1–2 (S.D.N.Y. Apr. 6, 2020) (ordering compassionate release of defendant with an immune-inflammatory disease who had served all but 34 days of a four-month sentence).

recovered, does not claim lasting effects from COVID-19, and he is otherwise a healthy 27-year-old. *See* Gov't Opp'n. at 5 (noting that as of January 11, 2020, Cueto's medical records show he has recovered from the virus and does not otherwise suffer from medical conditions placing him at a higher risk of serious symptoms); *see also* Def. Mem. at 18 (recognizing that Cueto has no known underlying medical conditions that make him susceptible to complications related to COVID-19). In these respects, his circumstances sharply contrast with those of various sentenced defendants whose release, on account of heightened vulnerability to COVID-19, this Court has ordered under § 3582(c). *See supra* note 5; *e.g.*, *Simon*, 2020 WL 5077390, at *4–6 (granting compassionate release to 72-year-old defendant with HIV, chronic obstructive pulmonary disorder, prostate cancer, Hepatitis C, and hypertension); *Davies*, 18 Cr. 390 (PAE), Dkt. 479 at 4–7 (similar).

Cueto's other arguments do not establish extraordinary and compelling reasons for release. Cueto points to his youth at the time of his offense and his steps towards rehabilitation. Def. Mem. at 15–17. These factors have a place in the evaluation of motions under § 3582(c). *See, e.g.*, *United States v. Benjamin*, No. 15 Cr. 445 (PAE), Dkt. 1144 at 6 (defendant's maturation since commission of shooting offense as a teenager, in combination with other factors including defendant's having served nine years of his 10-year sentence, supported early release during pandemic). But they do not carry the day here. The Court at sentencing already took account of Cueto's age in determining the just sentence. And while Cueto's rehabilitative efforts in prison are commendable, these fall well short of justifying release at a point when Cueto has served only about 30% his stated sentence for murder. Cueto also represents that he presents a low risk of recidivism and that his family will steer him towards lawfulness once he is released. Def. Mem. 19–20. While the Court does not dispute Cueto's sincerity or his family's

commitment to his successful reentry into society, given the viciousness of Cueto's offense, the Court cannot be so confident that, were he released, there would be minimal risk to the community, or that Cueto's family support or the support provided by the Delancey Street Foundation would securely guard against recidivism.

For these reasons, the Court finds that Cueto has not identified compelling reasons for his release. But even assuming that such reasons were present, to find early release justified, the Court would also have to find that Cueto's release at this point is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Here, the Court finds that the § 3553(a) factors, viewed in combination, do not support expediting Cueto's release by more than 10 years, as he requests. One such factor—the need for the sentence to reflect just punishment, 18 U.S.C. §3553(a)(2)(A)—weighs especially heavily in light of the extraordinary seriousness of Cueto's offense.

Cueto's murder of Paredes was premeditated, brutal, and horrific. As the Court reviewed at sentencing, Cueto targeted Paredes for retaliation in response to Paredes's having disrespected Cueto's gang. Sent. Tr. at 50. Paredes tried to run away upon Cueto's approach, but Cueto followed him, armed with a knife. *Id*. Cueto stabbed Paredes violently, in the chest and lung. He then left Paredes, age 17, to bleed to death in an alley. *Id*. Cueto then fled the country and, ignobly, knowingly allowed an innocent person, Hector Batista, to be charged for the crime. *Id*. at 54. For these reasons, the Court reasoned at sentencing that the seriousness of Cueto's offense, the need for the sentence to promote respect for the law, and the need for just punishment pointed towards a "very high sentence" consistent with that imposed. *Id.* at 50. Releasing Cueto today, with his having served less than a third of the sentence imposed, would not come close to achieving those important goals.

In this respect (and others), Cueto's circumstances diverge from those of the defendants whose compassionate release the Court *has* granted in recent months, recognizing the changed circumstances presented by COVID-19.  In addition to generally having had more severe medical conditions including co-morbidities for COVID-19, those defendants also had generally served a greater proportion of their sentences, such that the Court found the sentence resulting from a grant of compassionate release to be consistent with the § 3553(a) factors.  *See, e.g.*, *Simon*, 2020 WL 5077390, at *4–6; *United States v. Knox*, No. 15 Cr. 445 (PAE), Dkt. 1088 at 2–4 (S.D.N.Y. Apr. 10, 2020) (ordering compassionate release a defendant who had served all but seven months of an 88-month sentence); *Hernandez*, 451 F. Supp. 3d at 305 (same for defendant who had served 17 months of a 24-month sentence and was scheduled for release in four months); *Benjamin*, No. 15 Cr. 445 (PAE), Dkt. 1144 at 6–7 (same for a defendant who had asthma and had served nine years of his 10-year sentence); *United States v. Lizardi*, No. 11 Cr. 1032 (PAE), Dkt. 2523 at 2 (S.D.N.Y. Oct. 9, 2020) (same for a defendant who had served nearly 93 months of his 121-month sentence, and was expected to be released to a halfway house in five months).

The Court thus finds that the § 3553(a) factors disfavor Cueto's release at this time.  The Court accordingly denies Cueto's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

Cueto alternatively requests that, should the Court deny his motion for release, the Court reduce his sentence.  *See id.* at 9–10.  It is premature to consider such an application, with Cueto's having served well under half of his assigned sentence.  This decision is without prejudice to Cueto's right to move, at a later time, for a reduction of sentence.

SO ORDERED.

PAUL A. ENGELMAYER
United States District Judge

Dated: February 17, 2020
New York, New York