

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

July 29, 2024

**By ECF**
The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Moises Cueto*, 11 Cr. 1032 (PAE)

Dear Judge Engelmayer:

      The Government respectfully submits this letter in opposition to defendant Moises Cueto's motion under 18 U.S.C. § 3582(c)(1)(A) for a sentence reduction (the "Motion"). (Dkt. No. 2732). The defendant has not demonstrated an extraordinary and compelling reason meriting a sentence reduction, nor has he shown that the § 3553(a) factors weigh in favor of a reduction. Accordingly, the Court should deny the Motion.

      **I.**    **Background**

      As the Court is aware, on April 16, 2010, the defendant—who was a member of the Trinitarios' "Bad Boys" set—murdered Juandy Paredes, a 17-year-old member of a rival Trinitarios set, over a petty gang dispute. On that night, after the defendant and another "Bad Boys" member watched a YouTube video posted by the rival "268" Trinitarios set that insulted the "Bad Boys," the defendant and the other individual went to 268 territory to retaliate. (*See* February 17, 2021 Order (Dkt. No. 2587), at 1). Armed with a knife, the defendant and the other individual identified Paredes and two others as members of 268 and chased them. (*Id.*). As Paredes attempted to run away, the defendant stabbed Paredes four times, killing him. (*Id.*). The defendant then fled to the Dominican Republic, where he waited, knowing that an innocent individual had been arrested for the crime. (*See* Sent. Tr. at 54). The defendant did not return to the United States until 2011, after concluding that he was no longer in danger of being prosecuted; fortunately, the charges against that wrongfully-arrested individual were later dropped. (*Id.*; June 19, 2017 Presentence Investigation Report ("PSR") ¶ 88).

      The defendant was arrested on June 30, 2016, after being charged in a one-count superseding indictment with murder in aid of racketeering. (Dkt. Nos. 1989, 2009). On April 5, 2017, the defendant pleaded guilty to that count, pursuant to a written plea agreement. (PSR ¶ 3). The plea agreement provided that, although the defendant would ordinarily face a mandatory term of life imprisonment for that crime, because the defendant was a juvenile at the time of the murder, the statutory maximum sentence was life imprisonment. (*See id.* at 1 n.1, ¶ 3). In the plea

agreement, the parties further stipulated that, because the defendant committed second-degree murder, his total offense level was 35, he was in Criminal History Category I, and his Guidelines range was 168 to 210 months' imprisonment.

At the defendant's sentencing on July 20, 2017, this Court imposed a sentence of 174 months' imprisonment after hearing from the parties and Paredes' family. Among other factors, this Court emphasized the seriousness of the offense—noting that the defendant engaged in a premeditated attack in which he "brutally stabbed a teenager with a knife multiple times and left him to bleed in an alley" to "gain respect for a violent drug dealing gang"—then "let an innocent man rot in jail" for the murder. (Sent. Tr. at 50, 64). At the same time, the Court acknowledged various mitigating aspects of the defendant's background and conduct. In particular, the Court recognized the defendant's youth at the time of the crime, his rehabilitative efforts—including ceasing to associate with the gang upon returning to the United States, obtaining gainful employment, and accepting responsibility through his plea and statements at sentencing—and his culpability relative to similarly-situated defendants. (*Id.* at 56–60, 63–64). The Court specifically noted that the defendant was slightly less culpable than co-defendant Hargelis Vargas, who also committed a stabbing murder for the gang while under 18 years old, and who was sentenced to 210 months' imprisonment. (*Id.* at 63–64). The defendant did not appeal or collaterally attack his 174-month sentence.

In October 2020, the defendant filed a pro se motion for a sentence reduction; that motion was subsequently supplemented by a submission from CJA counsel. (Dkt. Nos. 2526, 2567–68). In that motion, the defendant primarily emphasized the difficult conditions of confinement the defendant was experiencing, including the risks to his health, as well as his youth at the time of the crime and his rehabilitative efforts.

The Court denied the sentence-reduction motion in a February 17, 2021 written opinion. (Dkt. No. 2587 ("Prior CR Order")). Although the opinion acknowledged the "extraordinary and unprecedented" nature of the COVID-19 pandemic, the Court noted that the defendant had already contracted COVID-19, did not claim any lasting effects, and appeared otherwise to be a healthy 27-year-old. (*Id.* at 8–9). The Court also noted that it had already taken the defendant's youth into account at the time of his sentencing, and that his rehabilitative efforts—while commendable—did not amount to an extraordinary and compelling reason for release, even when considered in conjunction with the defendant's other arguments. (*Id.* at 9–10). The Court further explained that, even if the defendant had demonstrated an extraordinary and compelling reason meriting release, the Section 3553(a) factors would weigh against release. In particular, the Court highlighted the brutal nature of the defendant's crime and the fact that he had served less than one-third of his sentence. (*Id.* at 10–11). Accordingly, the Court denied the defendant's motion, without prejudice to his ability to move for a sentence reduction at a later date. (*Id.* at 11).

The instant pro se Motion is dated June 24, 2024, and includes a number of exhibits, some of which were submitted separately by the defendant's family members. (Dkt. Nos. 2732–35, 2740). The defendant is currently incarcerated at Memphis FCI, and his projected release date is April 16, 2028. The defendant asks that his sentence be reduced to time served plus 30 days. (Dkt. No. 2732 at 9).

**II.     Applicable Law**

Under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018, a court upon a defendant's motion may reduce his term of imprisonment

> after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The First Step Act allows district courts "independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling.'" *United States v. Brooker*, 976 F.3d 228, 234–37 (2d Cir. 2020). But the "existence of 'extraordinary and compelling reasons' for a reduction does not mean that a district court *must* release the defendant." *United States v. Madoff*, 465 F. Supp. 3d 343, 349 (S.D.N.Y. 2020). If a court finds that a defendant has established an extraordinary and compelling reason for a reduction in sentence, it must then consider the section 3553(a) factors. As the Court is well aware, those factors include: the nature and circumstances of the offense; the defendant's history and characteristics; the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to provide the defendant with needed medical care; and the need to avoid unwarranted disparities in sentences.

As the movant, the defendant bears the burden of proving that he is entitled to relief under 18 U.S.C. § 3582. *Id.*; *see also United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease.").

**III.    Discussion**

The Motion should be denied because the defendant has failed to demonstrate an extraordinary and compelling reason meriting a sentence reduction, and even if he had, the Section 3553(a) factors weigh against a reduction.[1]

A. Lack of an Extraordinary and Compelling Reason for a Reduction

The Motion first asserts that the harsh conditions of confinement the defendant experienced during the COVID-19 pandemic constitute an extraordinary and compelling reason for a sentence reduction. There is no question that the lockdowns and other challenges posed by the pandemic made incarceration more difficult than in pre-pandemic times. Addressing a similar argument in the defendant's prior compassionate release motion, this Court explained that the defendant "does not claim lasting effects from COVID-19, and he is otherwise a healthy 27-year-old." (Prior CR Order at 9). In the instant Motion, the defendant does not identify any lasting effects of his contraction of COVID-19, nor any other way that the pandemic made his conditions of

---

[1] The Government does not dispute that the defendant meets the exhaustion requirement. (*See* Dkt. No. 2732 at 10, 12).

confinement more difficult than those of any other inmate who served time during the pandemic. COVID-19 unquestionably made incarceration more difficult, but absent more specific details about how the pandemic affected the defendant, the pandemic in itself should not constitute an extraordinary and compelling reason for a sentence reduction.

The defendant also asserts that his rehabilitative efforts constitute an extraordinary and compelling reason for a sentence reduction. It appears from the attached educational course report (Ex. 1) and the defendant's representations that he has taken advantage of educational programming opportunities and maintained steady employment within prison as a barber. Those efforts should be commended, but, in the Government's view, they do not amount to an extraordinary and compelling reason for a reduction.

At sentencing, the Court already took into account that the defendant stopped associating with the Trinitarios after the murder and "led a law-abiding life" for the "six years between the murder and getting caught," which the Court noted was "quite significant." (Sent. Tr. at 64). Moreover, the defendant's disciplinary record (attached as Exhibit 2) reflects several potentially serious infractions from the last several years. Specifically, the defendant received sanctions in 2021 for separate instances of "possessing a hazardous tool," and was sanctioned in 2022 for drinking homemade intoxicants. (Ex. 2 at 1). Each of these incidents—which all took place after the Court's last opinion denying the defendant compassionate release—appear to have resulted in the loss of good-conduct time and additional punishment. Although the disciplinary summary does not provide the full circumstances of these offenses, the defendant's disciplinary record is far from spotless. In light of that record and the fact that the Court already took into account the defendant's rehabilitation, his continued rehabilitative efforts do not constitute an extraordinary and compelling reason for release.

The defendant also asserts that his father has serious medical conditions and needs a caretaker. The Motion notes that the defendant's father lives alone (in Yonkers, it appears), and represents that, although the defendant's brother lives in Manhattan and his sister in eastern Pennsylvania, both have jobs and multiple children so cannot take care of their father. (Dkt. No. 2732 at 4). The Government is sympathetic to the challenges of caring for an elderly family member, which are challenges that are faced by many families with an incarcerated member (as well as families without an incarcerated member). The defendant's sister provided what appear to be the records from their father's April 2022 and April 2023 annual physicals; both state, at the beginning of the report: "Patient has no complaints." (Dkt. No. 2733 at 3, 14). Moreover, in a letter from the defendant's father, the elder Mr. Cueto states only "[m]y health isn't getting any better and it would be a blessing to have my son in my presence," without discussing further the need for a caretaker. (*Id.* at 23). In light of these facts, the defendant has not shown that his father's health and need for a caretaker constitute an extraordinary and compelling reason for the sentence reduction.

The defendant also alludes to potential disparities in the sentences of his co-defendants. (Dkt. No. 2732 at 7). Although his argument on this point is not entirely clear, the defendant does not acknowledge the Court's analysis at sentencing in which the Court carefully considered how the defendant's conduct compared to that of the most similarly-situated defendant, Hargelis Vargas, and concluded that the defendant deserved a sentence of three years less than the sentence imposed on Vargas. (*See* Sent. Tr. at 63–64).

Finally, the defendant asserts that an April 2010 New York Post article, which he claims recently came to his attention, shows that "[t]his court relied on untrue evidence to impose the sentence." (Dkt. No. 2732 at 6). Construed liberally, the defendant appears to assert that the news article states that Paredes flagged down NYPD officers after being stabbed and died in the hospital, whereas the Court believed at sentencing that Paredes died in the street. The defendant's sister, in her letter, reiterates this serious allegation, asserting that "the government have mislead [sic] all of us" (Dkt. No. 2733 at 1), as does another of the defendant's family members or friends, in an email the defendant attached to the Motion (Dkt. No. 2732 at 73 ("[Y]ou are serving time for something you did not commit.")).

This argument is factually incorrect. The April 21, 2010 New York Post article that the defendant and his sister submitted states that, after being stabbed multiple times, "Paredes stumbled away and asked a uniformed cop for help. He was taken to Lincoln Hospital, where he later died." (Dkt. No. 2733 at 30; Dkt. No. 2735 at 5). The defendant and his sister also submitted a "Bronx Ink" article, also posted April 21, 2010, which states that after Paredes was stabbed, he "flagged down a police van nearby and banged on its windows for help. 'I'm poked, I'm poked,' he told the cops. Then he collapsed. Paramedics attended to him there on the street, but he died before he arrived at Lincoln Hospital." (Dkt. No. 2733 at 27; Dkt. No. 2735 at 8).

Even assuming the accuracy of the articles—the New York Post article alleges that the individual who was later found to be wrongfully arrested committed the stabbing—the reported facts are entirely consistent with this Court's comments at sentencing, which emphasized that the defendant stabbed Paredes and then fled, leaving Paredes to bleed to death. (*See, e.g.*, Sent. Tr. at 50 ("You stabbed him in the chest and lung. And then you left him there to bleed to death, which he did."); *id.* at 51 ("When you stabbed him, you chose to cut and run. You chose to leave him to die.")). The defendant repeatedly stabbed Paredes and left him to die; that statement remains accurate regardless of whether Paredes died on the street or stumbled to a nearby police officer, asked for help, and died of his wounds at the hospital.

Even recognizing the pro se nature of the Motion, the defendant's (and, evidently, some of his family members') belief that this argument shows he is "innocent"—or, at least, that the Court sentenced him based on materially incorrect information—is perplexing. That the defendant chose to emphasize this argument in his Motion raises questions about whether he has fully accepted the gravity of his conduct. In any event, this argument does not come close to an extraordinary and compelling reason for a sentence reduction.

B.  The Section 3553(a) Factors

Even assuming that each of these arguments, alone or in conjunction, could constitute an extraordinary and compelling reason for a sentence reduction, the Section 3553(a) factors do not weigh in favor of a reduction.

At sentencing, this Court discussed the seriousness of the offense in significant detail. Paredes had not hurt the defendant; at most, he and his friends disrespected the violent gang set of which the defendant was a part. The defendant's attack was not a spur-of-the-moment decision; it was premeditated. He chose to arm himself with a knife. He chose to confront Paredes, then chase

him when he ran, then stab him repeatedly. The defendant extinguished the life of a 17-year-old "for no good reason." (Sent. Tr. at 50).

The defendant fled the United States after the murder, and did nothing when he learned that a person who was not involved in the murder had been arrested and charged—a "cowardly" choice. (Sent. Tr. at 54). And the murder was not the first time the defendant committed a violent act. About one year before the murder, the defendant slashed a victim with a knife in the back and hand during a gang fight. (Sent. Tr. at 56; PSR ¶ 89).

Moreover, as of the date of filing, the defendant has been in prison for about 97 months. That time amounts to just over 55% of his stated 174-month sentence. Releasing the defendant when he has served just over half of his sentence for a murder would be inconsistent with just punishment and the need for the sentence to reflect the seriousness of the offense.

So would a reduction in sentence. The difficult conditions of confinement during the pandemic, as well as the defendant's continued efforts toward rehabilitation, are, in the Government's view, significantly outweighed by the seriousness of the offense and the need for just punishment. Assuming that the defendant is released on April 16, 2028, as the Bureau of Prisons estimates, he will be 34 years old when he is released (he was 23 years old when he was arrested). As the Court pointed out at sentencing, the defendant will potentially have a long life ahead of him, but Paredes' life was "snuff[ed] out," and his family will never see him again. (Sent. Tr. at 52).

### IV. Conclusion

For these reasons, the Government respectfully requests that the Court deny the defendant's Motion.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____
Patrick R. Moroney
Assistant United States Attorney
Southern District of New York
(212) 637-2330

cc (by mail):   Moises Cueto
Reg. No. 75353-066
FCI Memphis
Federal Correctional Institution
P.O. Box 34550
Memphis, TN 38184

# EXHIBIT 1

```
NERBD             *            INMATE EDUCATION DATA       *      07-11-2024
PAGE 001 OF 001 *                  TRANSCRIPT              *      10:59:11

REGISTER NO: 75353-066    NAME..: CUETO                          FUNC: PRT
FORMAT.....: TRANSCRIPT   RSP OF: MEM-MEMPHIS FCI


---------------------------  EDUCATION INFORMATION  ---------------------------
FACL ASSIGNMENT DESCRIPTION                     START DATE/TIME STOP DATE/TIME
MEM   ESL HAS    ENGLISH PROFICIENT             11-01-2017 0828 CURRENT
MEM   GED EARNED GED EARNED IN BOP              03-26-2021 0001 CURRENT


----------------------------  EDUCATION COURSES  ------------------------------
SUB-FACL   DESCRIPTION                 START DATE  STOP DATE  EVNT AC LV   HRS
MCD        PHYSIOLOGY AND FITNESS PART 1 02-13-2023 CURRENT
MEM        REC SELF STUDY G            06-09-2024 07-07-2024    P  C  P     2
MEM        REC SELF STUDY D            02-25-2024 04-09-2024    P  C  P     2
MCD        CDL                         05-02-2023 05-08-2023    P  C  P    10
MCD        MECHANICS AND USAGE         08-08-2022 09-29-2022    P  C  P    10
FTD GP     PRE GED 0900 MCDERMOTT RM220 01-28-2021 03-26-2021   P  C  P   424
FTD GP     HEALTHY MINDS AND BODIES    11-03-2020 02-09-2021    P  C  P    24
FTD GP     GED E PRE RM217 M-F 0730-0900 08-21-2019 01-28-2021  C  W  I     0
FTD GP     HEALTHY MINDS AND BODIES    08-08-2020 10-01-2020    P  C  P    24
SCH        GED-MINNIG 7:30-9:30        03-29-2019 06-25-2019    P  W  I    66
SCH        FCI/FPC DRUG EDUCATION- RPP 6 01-31-2019 03-19-2019  P  C  P    12
SCH        DYNAMIC FLEXIBILITY         02-02-2019 03-07-2019    P  C  P     2
SCH        GED-FEGER 7:30-9:30         02-01-2018 05-02-2018    P  W  I    68
SCH        GED-FEGER 7:30-9:30         11-07-2017 01-22-2018    P  W  I    32
BRO M      COMMUNITY LEADERSHIP        04-03-2017 05-01-2017    P  C  P     5
BRO M      BLOOD PRESSURE              04-06-2017 04-27-2017    P  C  P     8
BRO M      ANGER MANAGEMENT            01-30-2017 03-10-2017    P  C  P    12
BRO M      II UNIT RESUME              01-06-2017 02-02-2017    P  C  P     8
BRO M      HEALTH EDUCATION PROGRAM    09-06-2016 10-04-2016    P  C  P    10
BRO M      ART PRGM ALL UNITS          09-07-2016 09-28-2016    P  C  P     8
BRO M      FINANCE PRE-TRIAL           09-06-2016 10-03-2016    P  C  P    12
BRO M      HEALTH EDUCATION PROGRAM    07-26-2016 08-23-2016    P  C  P    10


-----------------------------  HIGH TEST SCORES  ------------------------------
TEST         SUBTEST        SCORE      TEST DATE     TEST FACL   FORM     STATE
GED READY    MATH           146.0      08-07-2020    FTD         RF       NJ
             RLA            147.0      12-07-2020    FTD         RE       NJ
             SCIENCE        156.0      06-11-2019    SCH         RD
             SOC STUDY      145.0      04-18-2018    SCH         RB
GED 2014     MATH           147.0      11-20-2020    FTD                  NJ
             RLA            146.0      03-26-2021    FTD                  NJ
             SCIENCE        153.0      06-23-2020    FTD                  NJ
             SOC STUDY      153.0      05-29-2019    SCH                  PA
TABE M       BATTERY          6.3      11-01-2017    SCH         10
             LANGUAGE         5.0      11-01-2017    SCH         10
             MATH APPL        7.1      11-01-2017    SCH         10
             MATH COMP        4.8      11-01-2017    SCH         10
             READING          9.3      11-01-2017    SCH         10
             TOTAL MATH       5.8      11-01-2017    SCH         10



G0000        TRANSACTION SUCCESSFULLY COMPLETED
```

# EXHIBIT 2

```
 NERBD           *       INMATE DISCIPLINE DATA         *     07-11-2024
PAGE 001         *    CHRONOLOGICAL DISCIPLINARY RECORD  *     10:58:00

REGISTER NO: 75353-066 NAME..: CUETO, MOISES
FUNCTION...: PRT      FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 07-11-2024

-----------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 3898192 - SANCTIONED INCIDENT DATE/TIME: 02-21-2024 1230
UDC HEARING DATE/TIME: 02-28-2024 1525
FACL/UDC/CHAIRPERSON.: MEM/5 GP/ALEXANDER
REPORT REMARKS.......: UDC SANCTIONS INMATE
   310  BEING ABSENT FROM ASSIGNMENT - FREQ: 1
        LP V VISIT  / 60 DAYS / CS
                 FROM: 02-29-2024  THRU: 04-28-2024
        COMP:    LAW:
-----------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 3598960 - SANCTIONED INCIDENT DATE/TIME: 02-23-2022 2105
DHO HEARING DATE/TIME: 03-09-2022 1028            DHO REPT DEL: 06-22-2022 1400
FACL/CHAIRPERSON.....: MCD/M. LESLIE
REPORT REMARKS.......: ADMITTED TO DRINKING HOMEMADE INTOXICANTS
   112  USE OF DRUGS/ALCOHOL - FREQ: 1 ATI: DAB
        DIS GCT    / 41 DAYS / CS
        COMP:010 LAW:P   MANDATORY PLRA GUIDELINE SANCTION
        DS         / 14 DAYS / CS
                 FROM: 03-09-2022  THRU: 03-22-2022
        COMP:    LAW:    IMPOSED TO DETER FUTURE ACTS OF MISCONDUCT
        FF NVGCT   / 40 DAYS / CS
        COMP:010 LAW:P   IMPOSED DUE TO HISTORY OF IR"S
        LP COMM    / 6 MONTHS / CS
                 FROM: 10-13-2022  THRU: 04-12-2023
        COMP:    LAW:    IMPOSED TO DETER FUTURE ACTS OF MISCONDUCT
-----------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 3541725 - SANCTIONED INCIDENT DATE/TIME: 08-30-2021 2105
DHO HEARING DATE/TIME: 09-08-2021 1053            DHO REPT DEL: 09-20-2021 0830
FACL/CHAIRPERSON.....: FTD/K. HAMPTON
APPEAL CASE NUMBER(S): 1097767
REPORT REMARKS.......: BASED ON I/M ADMISSION & EVID THE DHO FINDS I/M GUILTY
                       OD PROH ACT CODE 108
   108  POSSESSING A HAZARDOUS TOOL - FREQ: 1 ATI: EYC RFP: D
        DIS GCT    / 41 DAYS / CS
        COMP:010 LAW:P   IN ACCORDANCE WITH PS 5270.09
        DS         / 30 DAYS / CS
                 FROM: 09-08-2021  THRU: 10-07-2021
        COMP:    LAW:    SANCTION IMPOSED TO DETER FUTURE MISCONDUCT
        LP COMM    / 400 DAYS / CS
                 FROM: 09-08-2021  THRU: 10-12-2022
        COMP:    LAW:    SANCTION IMPOSED TO DETER FUTURE MISCONDUCT




G0002         MORE PAGES TO FOLLOW . . .
```

```
  NERBD          *         INMATE DISCIPLINE DATA         *      07-11-2024
PAGE 002 OF 002 *      CHRONOLOGICAL DISCIPLINARY RECORD  *      10:58:00

REGISTER NO: 75353-066 NAME..: CUETO, MOISES
FUNCTION...: PRT       FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 07-11-2024

-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 3501090 - SANCTIONED INCIDENT DATE/TIME: 05-05-2021 1545
DHO HEARING DATE/TIME: 05-12-2021 1020         DHO REPT DEL: 05-21-2021 1230
FACL/CHAIRPERSON.....: FTD/K. HAMPTON
REPORT REMARKS.......: BASED ON I/M ADMISSION & EVID THE DHO FINDS I/M GUILTY
                       OF PROH ACT CODE 108
   108  POSSESSING A HAZARDOUS TOOL - FREQ: 1 ATI: EYC RFP: D
        DIS GCT    / 41 DAYS / CS
        COMP:010 LAW:P   IN ACCORDANCE WITH PS 5270.09
        DS         / 30 DAYS / CS
                FROM: 05-12-2021  THRU: 06-10-2021
        COMP:      LAW:    SANCTION IMPOSED TO DETER FUTURE MISCONDUCT
        LP PHONE   / 400 DAYS / CS
                FROM: 05-12-2021  THRU: 06-15-2022
        COMP:      LAW:    SANCTION IMPOSED TO DETER FUTURE MISCONDUCT
-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 3084089 - SANCTIONED INCIDENT DATE/TIME: 01-31-2018 1145
UDC HEARING DATE/TIME: 02-06-2018 0848
FACL/UDC/CHAIRPERSON.: SCH/4/RAUP
APPEAL CASE NUMBER(S): 933496
REPORT REMARKS.......: UDC DETERMINED GUILTY AS WRITTEN
   330  BEING UNSANITARY OR UNTIDY - FREQ: 1
        LP COMM    / 30 DAYS / CS
        COMP:      LAW:
-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 3036431 - SANCTIONED INCIDENT DATE/TIME: 09-22-2017 1259
DHO HEARING DATE/TIME: 10-05-2017 0858         DHO REPT DEL: 10-27-2017 0800
FACL/CHAIRPERSON.....: SCH/JORDAN A
REPORT REMARKS.......: INMATE ADMITTED POSSESSING EXPOSED RAZOR BLADES
                       CONCEALED IN SHOE THAT CAUSED INJURY TO STAFF.
   104  POSSESSING A DANGEROUS WEAPON - FREQ: 1
        DIS GCT    / 41 DAYS / CS
        COMP:010 LAW:P
        DS         / 30 DAYS / CS
        COMP:      LAW:
        LP COMM    / 6 MONTHS / CS
        COMP:      LAW:




        G0005         TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```