UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-v-<br><br>MOISES CUETO,<br><br>Defendant. | 11 Cr. 1032-80 (PAE)<br><br>OPINION & ORDER |

PAUL A. ENGELMAYER, District Judge:

This order resolves a *pro se* motion by defendant Moises Cueto for compassionate release from Federal Correctional Institution ("FCI") Memphis, pursuant to 18 U.S.C. § 3582(c). For the reasons that follow, the Court denies the motion.

**I.    Background**

**A.    Cueto's Prosecution, Guilty Plea and Sentencing**

Cueto was a member of the Bronx Trinitarios gang, a violent gang that murdered more than a dozen people and engaged in countless other acts of violence that terrorized portions of the northwest Bronx, where it also operated an open-air narcotics bazaar. *See* Dkt. 2587 at 1 ("Initial CR Decision"). In 2009, at around age 15, Cueto was initiated as a member of the Bad Boys chapter of the gang. *Id.* In connection with the gang, Cueto largely sold prescription pills, but by far his most significant crime involved stabbing to death Juandy Paredes, a member of the rival gang 268 Trinitarios ("268"), on April 16, 2010. *Id.*; *see also* Dkt. 2747 ("G. Mem.") at 1. That night, Cueto, then age 16, and another Bad Boys member ("CW-1") had watched a 268 YouTube video insulting the Bad Boys. Initial CR Decision at 1. In retaliation, they went into 268 territory armed with knives. *Id.* Cueto and CW-1 identified Paredes and two others as 268 members. *Id.* Cueto stabbed Paredes approximately four times in the street, killing him. *Id.*

Paredes was 17 years old. *Id.* On learning of Paredes's death, Cueto fled to the Dominican Republic. *Id. See generally* Dkt. 2217 ("Sent. Tr.") at 35, 54.

On June 30, 2016, Cueto was arrested for Paredes's murder, Dkt. 2009, and, on April 5, 2017, pled guilty to murder in aid of racketeering pursuant to a plea agreement, Initial CR Decision at 2. In the plea agreement, the parties agreed that Paredes's murder constituted a second-degree murder. *Id.* On July 20, 2017, in sentencing Cueto, the Court adopted the stipulated Guidelines range of 168 to 210 months' imprisonment. *Id.* After considering the factors set forth in 18 U.S.C. §3553(a), the Court sentenced Cueto to 174 months' imprisonment, followed by a five-year supervised release. Sent. Tr. at 47, 66. In sentencing him, the Court considered Cueto's youth at the time of the offense and at least some of his rehabilitative steps. Initial CR Decision at 2.

As of today, Cueto has served approximately 99 months, *see* G. Mem. at 6; his projected release date is April 16, 2028, *id.* at 2.

### B. Cueto's Initial Compassionate Release Motion

On October 29, 2020, the Court received a *pro se* motion from Cueto seeking early release in light of the COVID-19 pandemic. *See* Dkt. 2526. On December 16, 2020, the Court appointed CJA counsel to file a memorandum in support of Cueto's motion. *See* Dkt. 2553. On January 13, 2021, Cueto's counsel submitted that memorandum, *see* Dkt. 2567, arguing that compassionate release was warranted in light of the pandemic, the unexpectedly harsh and dangerous circumstances at FCI Fort Dix (where Cueto was then held) occasioned by the pandemic, and the fact that Cueto already contracted the virus and was symptomatic, Initial CR Decision at 2. In support of release, counsel also cited the passage of time, Cueto's youth at the time of the crime, his remorse, his participation in rehabilitation programs, and his release plan

supported by his family. *Id.* On January 20, 2021, the Government opposed Cueto's motion. *See* Dkt. 2573. It argued that the Court lacked jurisdiction to grant Cueto's motion because Cueto's appeal of his conviction was pending, and, alternatively, that Cueto's release would conflict with the § 3553(a) factors. Initial CR Decision at 2.

On February 17, 2021, the Court denied Cueto's motion, on two independent grounds. *See id.* at 4.[1]

First, Cueto had not established extraordinary and compelling reasons for release, as required by § 3582(c). *Id* at 10. The Court acknowledged the extraordinary and unprecedented nature of the pandemic, but found that Cueto's asserted reasons for release fell short of those in cases in which the Court had granted release. *Id.* at 7. Cueto had already contracted COVID-19, did not claim any lasting effects, had not identified any medical condition making him unusually susceptible to the virus, and appeared to be a healthy 27-year-old. *Id.* at 8–9; *see also id.* at 8 (noting that Cueto had articulated "limited reasons . . . why the risks he faces [from COVID-19] exceed those faced by others in federal custody"). The Court rejected Cueto's arguments based on his youth, which the Court had already taken into account at sentencing, and his rehabilitative efforts in prison, which the Court found commendable but well short of justifying release. *Id.* at 9.

---

[1] The Court found that, although Cueto's pending direct appeal divested the Court of jurisdiction to grant his compassionate release motion, it had authority to deny the motion, under Federal Rule of Criminal Procedure 37. Initial CR Decision at 3–4. On July 20, 2022, the Second Circuit summarily affirmed Cueto's conviction, dismissed his challenge to the imprisonment component of his sentence, and affirmed most conditions of supervised release, while remanding with the direction to this Court to clarify whether, as to the search condition it imposed, it intended to impose the language used in the presentence report or as orally pronounced at sentencing. *See* Dkt. 2663.

3

Second, even assuming Cueto had identified compelling reasons for release, his release approximately 30% of the way into his prison term was not consistent with the § 3553 factors. *Id.* at 10. In particular, the Court stated, the need for just punishment weighed heavily in favor of a long sentence, given the extraordinary seriousness of Cueto's offense. The Court explained:

> Cueto's murder of Paredes was premeditated, brutal, and horrific. As the Court reviewed at sentencing, Cueto targeted Paredes for retaliation in response to Paredes's having disrespected Cueto's gang. Paredes tried to run away upon Cueto's approach, but Cueto followed him, armed with a knife. Cueto stabbed Paredes violently, twice, in the chest and lung. He then left Paredes, age 17, to bleed to death in an alley. Cueto then fled the country, and ignobly, knowingly allowed an innocent person, Hector Batista, to be charged for the crime. For these reasons, the Court reasoned at sentencing that the seriousness of Cueto's offense, the need for the sentence to promote respect for the law, and the need for just punishment pointed towards a "very high sentence" consistent with that imposed. Releasing Cueto today, with his having served less than a third of the sentence imposed, would not come close to achieving those important goals.

*Id.* (citations omitted); *see also id.* at 11 (noting that the defendants whose release the Court had granted, unlike Cueto, had had more serious medical conditions including co-morbidities for COVID-19 and had served a much greater proportion of their sentences).

**C. Cueto's Present Motion**

In his present motion, dated June 24, 2024 and filed on July 8, 2024, Cueto asks that his sentence be reduced to time served plus 30 days. *See* Dkt. 2732 at 9 ("D. Mem.").[2] Cueto argues that a reduction is warranted based on harsh conditions of confinement during the pandemic, his rehabilitative efforts while in prison, his elderly father's medical needs and need for a caregiver, and asserted disparities in the sentences of his co-defendants. *See generally id.* On July 8, 2024, the Court received and filed a packet of exhibits consisting of a letter in support from Cueto's sister and father, medical records relating to Cueto's father, and copies of

---

[2] Cueto represents—and the Government does not dispute—that he exhausted his administrative remedies before filing this motion. *See* D. Mem. at 2; G. Mem. at 3 n.1.

4

newspaper articles. Dkt. 2733. Additional, largely duplicative, materials in support were filed thereafter. *See* Dkt. 2735; *see also* Dkt. 2740 (letter from friend/niece of Cueto). On July 29, 2024, the Government submitted a memorandum in opposition. Dkt. 2747. Cueto submitted a reply, dated August 12, 2024 and filed on August 27, 2024. Dkt. 2754.

## II.     Discussion

### A.     Standards Governing Compassionate Release Motions

"[U]pon motion of the defendant," and "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," the Court may reduce such defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The defendant bears the burden of proving he is entitled to compassionate release. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease." (citations omitted)); *see also, e.g., United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf. *See United States v. Phillibert*, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2021). However, "[a]s part of the First Step Act of 2018, Congress authorized courts to reduce a term of imprisonment upon motion by a defendant." *United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

Although Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in

5

sentence, *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020) (citing 28 U.S.C. § 994(t)), before November 1, 2023, the Sentencing Commission's only guidance on this point had been promulgated prior to the enactment of the First Step Act. This guidance thus applied only to a "motion of the Director of the Bureau of Prisons," *see* U.S.S.G. § 1B1.13 (historical note), and not "to compassionate release motions brought by defendants," *Brooker*, 976 F.3d at 236; accordingly, the Second Circuit held in 2020, this guidance "[could not] constrain district courts' discretion to consider whether any reasons [were] extraordinary and compelling" in such cases, *id. See also id.* at 237 ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."). Thus, through November 1, 2023, when assessing a motion brought by an imprisoned defendant and not the BOP, a district court was not constrained by U.S.S.G. § 1B1.13's enumeration of extraordinary and compelling reasons and could "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Id.* at 237.

Effective November 1, 2023, however, the Sentencing Commission amended the Guidelines to also cover defendant-initiated petitions. *See generally* U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023). The amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated.

The Commission's updated guidance identifies six circumstances that, singly or in combination, may so qualify. U.S.S.G. § 1B1.13(b). These are:

- *Medical circumstances of the defendant.* U.S.S.G. § 1B1.13(b)(1). In addition to previously recognized circumstances such as a defendant suffering from a terminal illness or a serious medical condition, *id.* § 1B1.13(b)(1)(A)–(B), the amended guidelines direct courts to consider whether the defendant is "suffering from a medical condition that

6

requires long-term or specialized medical care" that is not being provided in prison and without which the defendant is at risk of serious health deterioration or death, *id.* § 1B1.13(b)(1)(C), or is held at a facility affected by or at imminent risk of being affected by an outbreak of infectious disease or other "ongoing public health emergency declared by the appropriate federal, state, or local authority," where "due to personal health risk factors and custodial status," the defendant is at a greater risk of severe complications upon exposure, and where "such risk cannot be adequately mitigated in a timely manner." *Id.* § 1B1.13(b)(1)(D). This factor was informed by compassionate release decisions coming out of the COVID-19 pandemic. *See* U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 206 (Nov. 1, 2023).

- *Age of the defendant.* Coupled with a deterioration in physical or mental health corresponding with the aging process as well as the portion of the original sentence served at the time of a compassionate release motion, this may support sentence reduction. U.S.S.G. § 1B1.13(b)(2).

- *Family circumstances of the defendant.* Where the defendant is the "only available caregiver" for an immediate family member, this may support a sentence reduction. *See id.* § 1B1.13(b)(3).

- *Victim of abuse in custody.* Where the defendant while in custody on the sentence in question was a victim of sexual abuse, or physical abuse resulting in serious bodily injury "committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant," and the misconduct was "established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding," this may support a sentence reduction. *Id.* § 1B1.13(b)(4).

- *Catchall provision.* Where a defendant presents "any other circumstance or [a] combination of circumstances" that themselves or with the above circumstances are similar in gravity to those above, such may support sentence reduction. *Id.* § 1B1.13(b)(5). The Commission "rejected a requirement that 'other reasons' be similar in nature and consequence to the specified reasons. Rather, they need be similar only in gravity[.]" U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 207 ("[T]he Commission continues to believe . . . that judges are in a unique position to determine whether the circumstances warrant a reduction. Guidance beyond that provided in the amended policy statement regarding what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence is best provided by reviewing courts[.]" *Id.* (cleaned up).

- *Unusually long sentence plus changes in law.* Where a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances. U.S.S.G. § 1B1.13(b)(6).

7

Finally, even if extraordinary and compelling reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

## B.     Application to Cueto's Application

For two reasons, substantially tracking those underlying the Court's denial of Cueto's initial application for relief under § 3582(c), the Court denies his latest application for release.

*First*, Cueto has not established extraordinary and compelling reasons for a reduction in sentence. As the Court explained in denying his initial application, although the pandemic was an extraordinary event that made incarceration more trying than in pre-pandemic times, Cueto has not identified any factor that would not apply to any inmate incarcerated during that period. Initial CR Decision at 8–9. As before, he has not identified any unusual or lasting impact of his bout with COVID-19; he has not identified any co-morbidity or condition enhancing the virus's future risk to him; and he does not claim to have been in a facility (such as a municipal jail) where conditions of confinement during the early pandemic tended to be most onerous. *See, e.g.*, *United States v. Romero*, No. 15 Cr. 445 (PAE), 2020 WL 2490027, at *2 (S.D.N.Y. May 14, 2020) (denying compassionate release where defendant failed to proffer any facts suggesting that he was "more likely to contract COVID-19 than any other inmate" or was "particularly vulnerable to suffering complications from the virus due to any underlying health condition"); *United States v. Harris*, No. 15 Cr. 445-11 (PAE), 2020 WL 5801051, at *4 (S.D.N.Y. Sept. 29, 2020) (defendant failed to show he "suffered from gravely concerning medical ailments" that distinguished him from other inmates); *United States v. Geraldo*, No. 11 Cr. 1032 (PAE), 2023 WL 2584196, at *4 (S.D.N.Y. Mar. 21, 2023) (defendant's "concern[s] about the dire consequences to him from what would be a second bout of COVID-19" did not justify

8

compassionate release because such concerns were "speculative" and not out of the ordinary); *United States v. Marmolejos*, No. 19 Cr. 626 (PAE), 2021 WL 807128, at *4 (S.D.N.Y. Mar. 3, 2021) (similar).

Cueto's other arguments also do not distinguish him from the broad body of federal inmates, let alone establish that he meets any of the circumstances the Sentencing Commission has identified in U.S.S.G. § 1B1.13(b) as potentially qualifying an inmate for early release. It is commendable that Cueto has taken courses in prison and worked steadily as a barber. D. Mem. at 5. But these steps are not unusual, let alone extraordinary. *See, e.g., United States v. Corbett*, No. 10 CR. 184 (PAE), 2023 WL 8073638 (S.D.N.Y. Nov. 21, 2023) (defendant's "participation in programming d[id] not make out an extraordinary circumstance"); *United States v. Needham*, No. 06 Cr. 911 (AKH), 2022 WL 19769, at *4 (S.D.N.Y. Jan. 3, 2022) (finding rehabilitation through prison programming did not rise to the level of extraordinary and compelling reason for early release); *United States v. Torres*, No. 16 Cr. 500 (RMB), 2021 WL 1131478, at *3 (S.D.N.Y. Mar. 24, 2021) (similar); *United States v. Bolden*, 15 Cr. 466 (VB), 2021 WL 242551, at *2 (S.D.N.Y. Jan. 25, 2021) ("[P]articipation in or completion of [programming], while laudable, is not an extraordinary and compelling reason warranting a compassionate release."); *Marmolejos*, 2021 WL 807128, at *4 (defendant's "commendable" efforts at rehabilitation in prison fell "well short" of justifying compassionate release).[3] Nor do the medical challenges presented to Cueto's elderly father, who lives alone, and the demands on his siblings' time that may limit their time with the father, D. Mem. at 4–5, make Cueto's situation unusual, let alone extraordinary. The incarceration of many inmates leaves parents without a child to attend to

---

[3] The Government argues that Cueto's disciplinary infractions would, in any event, offset these rehabilitative efforts. *See* G. Mem. at 4 & Ex. 2.

9

them. And Cueto has not established a particularly urgent need on his father's part for him to serve as caretaker. The letter from the elder Cueto states only that "[m]y health isn't getting any better and it would be a blessing to have my son in my presence." Dkt. 2733 at 23; *see also id.* at 3, 14 (annual physical exams of father, not reporting dire conditions). He does not recite a concrete need for a caretaker or why Cueto has special competence to look after him. *See, e.g., United States v. Fiseku*, No. 14 Cr. 384-1 (PAE), 2020 WL 7695708, at *4 (S.D.N.Y. Dec. 28, 2020) (prolonged separation from family or inability to attend to their needs did not differentiate defendant from other prisoners); *United States v. O'Bryant*, No. 16 Cr. 0317-3 (PAE), 2022 WL 17168192, at *2 (S.D.N.Y. Nov. 22, 2022) (similar).

Cueto next implies that there were unjustified disparities in the sentences the Court imposed in this 76-defendant case. D. Mem. at 7. At Cueto's sentencing, however, the Court carefully considered how Cueto's sentence compared to the most similarly situated co-defendant, Hargelis Vargas, who also participated in a murder in support of the Trinitarios, and concluded that Cueto's sentence was rightly three years shorter than Vargas's. *See* Sent. Tr. 63–65. More broadly, a review of the sentencing minutes in this overall case would reveal a consistent effort to calibrate the sentences of similarly situated defendants. In Cueto's case, proper comparators would consist of Trinitarios members who committed a vicious murder and were not eligible for sentencing credit based on having cooperated with the investigation or prosecution. Cueto has not identified any defendant meeting these specifications with whose sentence his sentence cannot easily be harmonized.

Finally, Cueto attaches a 2010 *New York Post* article which recites that his stabbing victim, Paredes, died in the hospital. Dkt. 2733 at 30. This, Cueto contends, conflicts with a statement by the Court to the effect that Paredes died in the street. *See also id.* at 30 (attaching

2010 *Bronx Ink* article). The location of Paredes's death is, however, irrelevant to Cueto's culpability for Paredes's murder, which Cueto has repeatedly admitted. In pleading guilty, Cueto admitted stabbing Paredes the night of his death. *See* Dkt. 2166 (Tr. of April 5, 2017 Hearing) at 23 ("I stabbed Juan D. Paredes. . . . I stabbed one of them one or twice, and I stabbed, and that's when he tried to run. The kid that I stabbed, he tried to run, and Joan Vasquez, he grabbed him and viciously stabbed him, and then he died."); *id.* at 23–24 (confirming he stabbed Paredes one or two times and that Vasquez then stabbed Paredes); *id.* at 24 (confirming that his intention at the time was to kill Paredes); *id.* at 24–25 (confirming that he and Vasquez participated in the stabbing because Paredes and the people with him that night were rivals of the Trinitarios gang). The presentence report, whose accuracy Cueto admitted at sentencing, Sent. Tr. at 5, similarly set out that Cueto had stabbed Paredes approximately four times; that Paredes had died of the stab wounds; that Cueto's bloody knife, and jacket, were found nearby; and that Cueto soon after fled to the Dominican Republic, Dkt. 2184 ("PSR") ¶¶ 85–88. In any event, Cueto's contention that the Court misstated the location of Paredes's death is incorrect. The Court at sentencing stated that Cueto "left him [Paredes] there to bleed to death, which he did," Sent. Tr. at 50, and in denying Cueto's initial § 3582(c) motion similarly stated that Cueto, after stabbing Paredes in the chest and lung, "then left Paredes, age 17, to bleed to death in an alley." Initial CR Decision at 10. Properly read, the Court's statements were that Cueto had left Paredes in the street, in the process of bleeding to death, not that Paredes in fact had later expired there. *See also* Sent. Tr. at 51 ("When you stabbed him, you chose to cut and run. You chose to leave him to die."). The articles do not, in any respect, support Cueto's bid for early release.

Cueto thus has not established an extraordinary and compelling basis for a sentence reduction.

Second, even if Cueto had made this showing, the § 3553(a) factors, considered in combination, continue to favor the sentence imposed. At sentencing, the Court heard at length from defense counsel and the Government, and from members of Paredes's family. In imposing sentence, the Court then carefully and in detail reviewed the § 3553(a) factors as they applied to Cueto, and explained why these required the sentence of 174 months' imprisonment and made any lesser sentence unsustainable. *See* Sent. Tr. at 47–66.

Particularly influential in the Court's assessment that a long sentence was needed were the interests in just punishment and in promotion of respect for the law, given the gravity of Cueto's brutal murder of Paredes. *Id.* at 49–54. The offense, the Court noted, was premeditated—Cueto had armed himself with a knife and set out to confront Paredes—and undertaken to advance the interests of a violent gang. *Id.* at 49–51. The offense was also vicious: Cueto had stabbed his victim multiple times. *Id.* at 50. As an indicator of the seriousness of the offense, the Court noted, had Cueto been age 18 when he killed Paredes and been convicted of murder in aid of racketeering, he would have faced a mandatory life sentence. *Id.* at 51–52. Compounding the offense's seriousness, Cueto had fled after the murder, and, in what the Court termed an act of cowardice, had done nothing when an innocent person, Hector Batista, was charged with the murder. *Id.* at 54.

The Court also carefully evaluated other § 3553(a) factors. The interest in general deterrence was present but did not point to a specific sentence. *Id.* at 54–55. The interests in specific deterrence and protection of the public were also present, but these were lessened by Cueto's youth and capacity to mature, the fact that he no longer was a member of the gang, and the fact that he had not committed crimes after killing Paredes. *Id.* at 56–59. The Court also took note of mitigating factors, including Cueto's age, the loss of his mother at a young age,

12

medical issues, his acceptance of responsibility as reflected in his guilty plea, and letter testimonials from family and friends. *Id.* at 58–63. The Court also considered how Cueto's case compared to those of other Trinitarios defendants, including Vargas, the closest comparator, and whose sentence, the Court held, was properly several years longer than Cueto's. *Id.* at 63–64.

The Court's assessment today is that the assembled § 3553(a) factors continue to favor the sentence imposed, which reflected considerable leniency given the bloodthirstiness of Cueto's murder of Paredes. That sentence took into account the key mitigating facts particular to Cueto on which his submission relies, including Cueto's youth and capacity for rehabilitation. A shorter sentence than imposed would not respect the seriousness of the murder Cueto committed or adequately promote respect for the law. *See* 18 U.S.C. § 3582(c)(1)(A) (release permissible only if compatible with § 3553(a) factors); *see, e.g.*, *United States v. Butler*, No. 18 Cr. 834-10 (PAE), 2022 WL 17968627, at *3 (S.D.N.Y. Dec. 27, 2022) (§ 3553(a) factors, considered "in totality," disfavored early release); *United States v. Lopez*, No. 11 Cr. 1032 (PAE), 2020 WL 4450941, at *2–3 (S.D.N.Y. Aug. 3, 2020) (defendant's "history of senseless and retributive violence" "carrie[d] the day as to court's assessment of the risk he would pose to society if at liberty"); *United States v. Wright*, No. 15 Cr. 445-3 (PAE), 2022 WL 134870, at *5 (S.D.N.Y. Jan. 13, 2022) (same); *United States v. Hope*, 464 F. Supp. 3d 646, 650 (S.D.N.Y. 2020) (interest in public safety weighed heavily against early release where defendant's conduct had been "violent, severe, and senseless"); *see also* Initial CR Decision at 9. The sole new fact cited by Cueto, the general difficulty of prison life amid the lockdowns occasioned by COVID-19, does not, without some showing particular to Cueto, merit a reduction in sentence, let alone a reduction to the sentence he seeks of time served plus 30 days. *See, e.g.*, *United States v. LaFord*, No. 11 Cr. 1032-07 (PAE), 2020 WL 4677595, at *2 (S.D.N.Y. Aug. 12, 2020)

13

(denying compassionate release for defendant suffering from medical condition "put[ting] him at high risk status" because, *inter alia*, a reduction in sentence would have been "inconsistent" with § 3553(a) factors); *United States v. Teman*, No. 19 Cr. 696 (PAE), 2024 WL 1235616, at *5 (S.D.N.Y. Mar. 22, 2024) (similar); *Geraldo*, 2023 WL 2584196, at *4 (allusion to prison conditions occasioned by COVID-19 did not avail applicant for compassionate release where § 3553(a) factors, "in totality," did not support a lesser sentence than imposed); *Romero*, 2020 WL 2490027, at *2 (same).

## CONCLUSION

For the reasons stated, the Court denies Cueto's motion for compassionate release. The Clerk of Court is respectfully directed to terminate the motion pending at Docket 2732 and to mail a copy of this decision to Cueto at the following address:

Moises Cueto, 75353-066
Memphis FCI, Beale B-313
P.O. Box 34550
Memphis, TN 38184

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: September 30, 2024
       New York, New York